EXHIBIT A

1    Theodore J. Holt, SBN 148899
     David R. Zarka, SBN 103185
2    Alissa S. Holt, SBN 217005
     HACKARD & HOLT
3    11335 Gold Express Drive, Suite 105
     Gold River, CA 95670
4    Telephone: (916) 853-3000
     Facsimile: (916) 853-3010
5

6    Attorneys for Plaintiff
     JERRY STRANGE
7

8

```
WCS&R

DEC 0 4 2006

RECEIVED
```

9         **IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10               **FOR THE COUNTY OF LOS ANGELES**

| | |
|---|---|
| 11   Coordination Proceeding<br>     Special Title (Rule 1550(b)) | )   JCCP No. 4247 |
| 12 | )   Case No.:_____ |
|      VIOXX® CASES | ) |
| 13 | )   **County of Origin:**   **SHASTA** |
| 14   JERRY STRANGE, | )   **Superior Court** |
| 15            Plaintiff, | )   *(By Order of the Honorable Victoria G.* |
| 16   v. | )   *Chaney, the designated county of origin* |
| | )   *shall be deemed, and is stipulated to be, the* |
| 17   MERCK & COMPANY, INC., a | )   *original county in which this case was* |
|      corporation; McKESSON | )   *initially filed and pending for purposes of* |
| 18   CORPORATION, a corporation; | )   *removal under U.S.C. § 1441(a) and* |
|      AMERISOURCEBERGEN DRUG | )   *potential trial venue.)* |
| 19   CORPORATION, a corporation; | ) |
|      PFIZER, INC.; PHARMACIA | )   **COMPLAINT: AMENDED NOTICE OF** |
| 20   CORPORATION; G.D. SEARLE | )   **ADOPTION OF VIOXX MASTER** |
|      LLC, (FKA G.D. SEARLE & CO.); | )   **COMPLAINT (2005 Amended NOA)** |
| 21   DOES 1 to 100; PHARMACEUTICAL | ) |
|      DEFENDANT DOES 101 to 200, and | )   Assigned to Honorable Victoria G. Chaney, |
| 22   DISTRIBUTOR DEFENDANT DOES | )   Department 324 |
|      201 to 300, inclusive, | ) |
| 23 | ) |
|            Defendants. | ) |
| 24 | ) |

25   / / /

26   / / /

27   / / /

28
                                   1

Complaint: Amended Notice of Adoption of Vioxx Master Complaint (2005 Amended NOA)

1       Plaintiff, JERRY STRANGE, complains against Defendants, and each of them, and

2   allege as follows:

3       Pursuant to the Court's Case Management Order No. 3:  General Pre-trial Order and Case

4   Management Order No. 6:  Order Regarding Direct Filing, Plaintiff, JERRY STRANGE, hereby

5   adopts the Master Complaint, and any rulings or orders of the Court relating thereto:

6       1. (a)  **Causes of action and Parties alleged in the Master Complaint.**   Plaintiff

7   incorporates by reference each of the causes of action in the Master

8   Complaint checked below:

9       ☒    Strict Liability – Failure to Warn

10      ☒    Negligence

11      ☒    Negligence Per Se

12      ☒    Breach of Implied Warranty

13      ☒    Breach of Express Warranty

14      ☒    Deceit by Concealment

15      ☒    Negligent Misrepresentation

16      ☒    Violation of Business & Professions Code § 17200

17      ☒    Violation of Business & Professions Code § 17500

18      ☐    Wrongful Death

19      ☐    Survivor Action

20      ☐    Loss of Consortium

21      **(b)**    **Causes of Action and/or Parties not alleged in the Master Complaint.**

22      Plaintiff alleges additional causes of action and/or names additional parties not

23  mentioned in the Master Complaint as follows:  PFIZER, INC.; PHARMACIA CORPORATION;

24  G.D. SEARLE LLC. (FKA G.D. SEARLE & CO.).  See attached addendum.

25  ///

26  ///

27  ///

28                                     2

M00931877B

1   2.    Plaintiff is a resident of the State of California, County of Shasta.  Plaintiff's

2   injuries as alleged in this litigation occurred in the County of Shasta, in the State of California.

3   3.    Plaintiff ☒ is/ ☐ is not claiming damages for mental and/or emotional distress.

4   4.    ☒    Plaintiff is an individual who ingested VIOXX®, CELEBREX and/or

5   BEXTRA, and who asserts claims for damages herein by complaining of the following injuries:

6   Including but not limited to elevated blood pressure, economic damages

7   ☐    Plaintiff is the spouse of _____, an individual who ingested

8   VIOXX® and allegedly sustained personal injuries as a result.

9   ☐    Plaintiff's decedent, _____, is an individual who ingested

10  VIOXX® and allegedly sustained fatal injury as a result.  The following plaintiffs and heirs of

11  plaintiff's decedent, or other persons entitled to bring an action for the wrongful death of

12  plaintiff's decedent, and bring the causes of action alleged herein pursuant to Code of Civil

13  Procedure § 377.60:_____

14  _____

15  ☐    Plaintiff is a personal representative or successor in interest to decedent,

16  _____, who ingested VIOXX® and allegedly sustained fatal injury as a result,

17  and is authorized to bring a survivor action on behalf of the decedent pursuant to Code of Civil

18  Procedure § 377.31, et seq.  Plaintiff has been appointed as the decedent's personal representative

19  or successor in interest by the following court, on the following date:_____

20  _____

21  5.    The Vioxx, Celebrex, and/or Bextra ingested by plaintiff or decedent was

22  purchased at the following pharmacies (provide name and address of each pharmacy): K-MED

23  PHARMACY, 1615 MEDIAN AVENUE, CENTRAL VALLEY, CA 96019

24  6.    (If plaintiff alleges a cause of action for deceit by concealment and/or a cause of

25  action for negligent misrepresentation, plaintiff must complete this section.)  Plaintiff claims that

26  defendants are liable to plaintiff for deceit by concealment and/or negligent misrepresentation

27  based on the following allegations:

28  _____

3

Complaint: Amended Notice of Adoption of Vioxx Master Complaint (2005 Amended NOA)

1       (a)    What allegedly false statement(s) did defendants make to you or your

2   doctor *(if doctor, state the name and address of the doctor)*?: <u>In an effort to increase sales of the</u>

3   <u>drug and improve profits, defendants concealed and misrepresented the safety of Vioxx,</u>

4   <u>Celebrex, and Bextra by and through documents and pharmaceutical representatives. Defendants</u>

5   <u>did not include accurate portrayals of the risks associated with Vioxx, Celebrex and Bextra and</u>

6   <u>concealed the serious cardiovascular and other risks of Vioxx, Celebrex and Bextra. Defendants</u>

7   <u>knew of these adverse risks through clinical trials and adverse event reports as well as other</u>

8   <u>sources, yet did not divulge the information.</u>

9       (b)    State the name and job title of the individual(s) who made the above-

10  described statements to you or your doctor?: <u>On information and belief, defendants and</u>

11  <u>defendants' sales representatives withheld and denied the adverse health effects.</u>

12      (c)    When, and by what means (e.g., writing, oral statement, television, Internet,

13  etc.), were the above-described statements made to you or your doctor?: <u>On information and</u>

14  <u>belief, written communications, oral statements and other means were used to misrepresent the ill</u>

15  <u>effects of Vioxx, Celebrex and Bextra. Defendants concealed the significant increases in adverse</u>

16  <u>cardiovascular events among Vioxx, Celebrex and Bextra users in all means of communication.</u>

17      (d)    When, and how, did you or your doctor rely on the above-described

18  statements?: <u>Plaintiff's doctor relied on the misrepresentation and concealment by prescribing</u>

19  <u>Vioxx, Celebrex and Bextra as treatment. Plaintiff relied on the misrepresentation by purchasing</u>

20  <u>and ingesting the dangerous drugs.</u>

21      (e)    If the above-described statements were false by virtue of defendants'

22  concealment of facts that were known by defendants, state the facts that were concealed and that,

23  if known by you or your doctor, would have prevented your alleged injury: <u>Defendant concealed</u>

24  <u>the serious cardiovascular and other risks associated with Vioxx, Celebrex and Bextra. Defendant</u>

25  <u>withheld findings from adverse event reports, clinical trials and studies which showed statistically</u>

26  <u>significant increases in cardiovascular events among Vioxx, Celebrex and Bextra users.</u>

27      7.    Plaintiff requests the relief checked below:

28

4

Complaint: Amended Notice of Adoption of Vioxx Master Complaint (2005 Amended NOA)

M003318760

1    ☒    Past and future general damages, according to proof.

2    ☒    Past and future medical and incidental expenses, according to proof.

3    ☒    Past and future loss of earnings and/or earning capacity, according to proof.

4    ☒    Punitive and exemplary damages, where permitted by law.

5    ☒    Damages for past and future mental and/or emotional distress, according to

6         proof.

7    ☐    Damages for past and future loss of consortium, according to proof.

8    ☒    Costs of suit incurred herein.

9    ☐    Injunctive relief (specify): _____

10    _____

11    _____

12    ☒    Other (specify): ___For disgorgement of profits according to proof, for

13    attorneys fees and for other such and further relief as this Court deems just and

14    proper._____

15

16    Dated: September 21, 2006          HACKARD & HOLT

17

18                                       By: _____

19                                       ALISSA S. HOLT
                                         Attorneys for Plaintiff
20                                       JERRY STRANGE

21

22

23

24

25

26

27

28

                                       5

M009318781

1       1(b)   **Causes of Action and/or Parties Not Alleged in the Master Complaint:**

2       Pursuant to Case Management Order No. 6: <u>Direct Filing and Adoption of Master</u>

3  <u>Complaint</u>, subsection 2(c), Plaintiffs herein name the additional defendant parties listed below

4  and allege each and every cause of action set forth in the Master Complaint adopted herein

5  against said parties.  Further, plaintiffs incorporate the following information as to the below-

6  named defendants in support of their allegations against said defendants as if set forth in full in

7  each and every cause of action of the Master Complaint:

8                                 **ADDITIONAL DEFENDANTS**

9       PFIZER, INC. ("PFIZER"), a Delaware Corporation; PHARMACIA CORPORATION

10  ("PHARMACIA"), a Delaware Corporation; G.D. SEARLE LLC, (FKA G.D. SEARLE & CO.)

11  ("SEARLE"), a Delaware Corporation; and DOES 301 to 400.

12       1.    Defendant PFIZER is a Delaware corporation headquartered and with a principal

13  place of business in New York, New York.  On July 16, 2002, PFIZER announced its proposed

14  acquisition of PHARMACIA.  On April 16, 2003, PFIZER completed its $60 billion acquisition

15  of PHARMACIA.  As a wholly-owned subsidiary of PFIZER, PHARMACIA acted in all aspects

16  as PFIZER's agent and alter ego.  At all times relevant hereto, PFIZER, and/or its predecessors in

17  interest, were engaged in, inter alia, the business of testing, manufacturing, labeling, marketing,

18  distributing, and promoting Cox-2 inhibiting drugs, including Celebrex and Bextra throughout

19  the United States.  Plaintiffs allege on information and belief that PFIZER does business in

20  California and in Los Angeles County and, at all times relevant hereto, tested, manufactured,

21  labeled, marketed, distributed, promoted and sold the drugs Celebrex and Bextra.

22       2.    PFIZER includes any and all parents, subsidiaries, affiliates, divisions, franchises,

23  partners, joint venturers, and organizational units of any kind, their predecessors, successors, and

24  assigns and their present officers, directors, employees, agents, representatives, and other persons

25  acting on their behalf.

26       3.    Defendant, PHARMACIA, is a Delaware corporation with its principal place of

27  business in New Jersey.  PHARMACIA was created in April 2000, through the merger of

28

M009318792

1   Pharmacia & Upjohn with Monsanto Company and its G.D. SEARLE unit.  PHARMACIA is

2   now a wholly-owned subsidiary of PFIZER.  At all times relevant hereto, PHARMACIA, and its

3   predecessors in interest, were engaged in, inter alia, the business of testing, manufacturing,

4   labeling, marketing, distributing, promoting, and selling Cox-2 inhibiting drugs, including

5   Celebrex and Bextra throughout the United States.  Plaintiff alleges on information and belief

6   that Pharmacia does business in California and in Los Angeles County and, at all times relevant

7   hereto, it tested, manufactured, labeled, marketed, distributed, promoted and sold the drugs

8   Celebrex and Bextra.

9       4.    Defendant G.D. SEARLE LLC, (FKA G.D. SEARLE & CO.), is a Delaware

10   Corporation with its principal place of business in Illinois.  In April 2000, SEARLE was acquired

11   by PHARMACIA, and became a wholly-owned subsidiary of PHARMACIA.  At the time of

12   PFIZER's acquisition of PHARMACIA, SEARLE was a wholly-owned subsidiary of

13   PHARMACIA, acting as its agent and alter ego in all matters alleged in this Complaint, and is

14   now a wholly-owned subsidiary of PFIZER.  At all relevant times hereto, SEARLE, and its

15   predecessors in interest, were engaged in, inter alia, the business of testing, manufacturing,

16   labeling, marketing, distributing, promoting, and selling Cox 2 inhibiting drugs, including

17   Celebrex and Bextra throughout the United States.  Plaintiff alleges on information and belief

18   that Pharmacia does business in California and in Los Angeles County and, at all times relevant

19   hereto, it tested, manufactured, labeled, marketed, distributed, promoted and sold the drugs

20   Celebrex and Bextra.

21       5. Celecoxib was developed in 1998, by SEARLE and marketed jointly by SEARLE and

22   PFIZER under the brand name, Celebrex.  SEARLE was acquired by PHARMACIA, which was

23   then acquired by PFIZER, in part so that PFIZER could take full control of Celebrex.

24       6.    Defendant McKESSON CORP. (currently named in the Master Complaint

25   adopted herein) packaged, distributed, supplied, sold, placed into the stream of commerce,

26   labeled, described, marketed, advertised, promoted and purported to warn or to inform users

27

28

M0093167/83

1  regarding the risks pertaining to, and assuaged concerns about the pharmaceutical drugs Celebrex

2  and Bextra in and throughout the State of California, including Los Angeles County.

3       7.    Plaintiffs are informed and believe, and based thereon allege, that in committing

4  the acts alleged herein, each and every managing agent, agent, representative and/or employee of

5  the defendant was working within the course and scope of said agency, representation and/or

6  employment with the knowledge, consent, ratification and authorization of the Defendant and its

7  directors, officers and/or managing agents.

8       8.    The true names and capacities, whether individual, corporate, associate or

9  otherwise, of Defendants named herein as DOES 301 to 400, and each of them, are unknown to

10  Plaintiffs, who therefore, sue said Defendant by such fictitious names. Plaintiffs will ask leave to

11  amend this Complaint to state said Defendants' true identities and capacities when the same have

12  been ascertained.

13       9.    Plaintiffs are informed and believe and based thereupon allege that at all times

14  herein mentioned each of the Defendants was the agent, servant and/or employee or occupied

15  other relationships with each of the other named Defendants and at all times herein mentioned

16  acted within the course and scope of said agency and/or employment and/or other relationship

17  and each other Defendant has ratified, consented to, and approved the acts of his agents,

18  employees, and representatives, and that each actively participated in, aided and abetted, or

19  assisted one another in the commission of the wrongdoing alleged in the Complaint.

20       10.    At all times relevant to this action, Defendants, and each of them, intentionally,

21  recklessly, and/or negligently concealed, suppressed, omitted and misrepresented the risks,

22  dangers, defects and disadvantages of Cox-2 inhibiting drugs, including Celebrex and Bextra,

23  and advertised, promoted, marketed, sold and distributed said drugs as a safe prescription

24  medication when, in fact, Defendants had reason to know, and did know, that said drugs were not

25  safe for its intended purposes, for the patients for whom it was prescribed and for whom it was

26  sold; and that Celebrex and Bextra caused serious medical problems and, in certain patients,

27  catastrophic injuries and death.

28

M00931876A

1        11.    In engaging in the conduct alleged herein, each Defendant acted as the agent for

2    each of the other Defendants, or those Defendant's predecessors in interest.

3    **GENERAL ALLEGATIONS APPLICABLE TO ALL CAUSES OF ACTIONS**

4        12.    Defendants, PFIZER and PHARMACIA, fraudulently induced consumers to

5    purchase their pharmaceutical drug Celebrex (also known as Celecoxib) and Bextra (also known

6    as Valdecoxib) by advertising non-existing benefits and concealing and trivializing known

7    deadly and life altering risks.

8        13.    Celebrex and Bextra are selective Cox-2 inhibitors, non-steroidal anti-

9    inflammatory drugs (NSAID). In December 1998, the FDA approved Celebrex to provide

10    treatment of chronic and short-term pain. At the time it was the first of its kind on the market.

11    Both before and after its approval, clinical trials showed that Celebrex could cause serious side

12    effects unknown to most consumers and physicians. Despite this, Defendants did little if

13    anything to alert physicians and consumers to the inherent risks of Celebrex.

14        14.    In November 2001, the FDA approved Bextra to provide treatment of chronic

15    short-term pain. After its approval, clinical trials showed that Bextra could cause serious side

16    effects unknown to most consumers and physicians. Despite this, Defendants did little if

17    anything to alert physicians and consumers to the inherent risks of Bextra.

18        15.    Each of the defendants used overly aggressive marketing tactics in order to

19    exaggerate the benefits provided by these NSAID drugs. In heavy competition with each other,

20    Merck, PFIZER and PHARMACIA rushed through clinical trials to get the drugs onto the

21    market. Defendants ignored flaws in the original clinical studies in hopes of gaining FDA

22    approval. Defendants saturated the market with false, deceptive and fraudulent information and

23    Vioxx, Bextra and Celebrex.

24        16.    Like Merck, Defendants, PFIZER and PHARMACIA, engaged in false and

25    deceptive advertising regarding Bextra and Celebrex. Though no testing of Celebrex had ever

26    lasted over a year, Defendants nonetheless hailed it as a huge breakthrough. Defendants

27    manipulated the information given to physicians to exaggerate Celebrex's benefits and to conceal

28

M009318785

1   its deadly risks through direct to consumer advertisements, press releases, promotional

2   conference calls, sales pitches and traditional advertisements. Defendants reiterated Celebrex's

3   health benefit claims to the medical community, but it did so without scientific justification.

4   PFIZER and PHARMACIA conducted pseudo-scientific studies intended to deceptively justify

5   Celebrex as safely providing the advertised benefits.

6       17.    Further, Defendants specifically touted the benefits of Celebrex over other

7   NSAIDs because it was easier on the gastrointestinal tract that prior NSAIDs such as ibuprofen

8   (Motrin and Advil) or naproxen (Aleve). Despite the claim, Defendants have never conclusively

9   demonstrated the gastrointestinal superiority of Celebrex over any NSAID.

10      18.    After studies funded by Defendants, several study authors made claims to the

11  Journal of American Medicine about Celebrex's benefits over older NSAIDs. These statements

12  were later shown to be false. The authors, paid by Defendants, had made statements that the

13  study ran six months rather than a full year. Further, the authors left out the ulcer problems that

14  had occurred in the later half of the study. The Arthritis Advisory Committee to the FDA found

15  that Defendants had not established a "clinically meaningful" safety advantage over NSAIDs and

16  that the data from the study would not support a superiority claim.

17      19.    In December, the National Cancer Institute stopped the treatment phase of a trial

18  of Celebrex. The study, designed to see whether Celebrex protected against the recurrence of

19  colon polyps, found that participants given the drug were at least 2 ½ times more likely to have

20  heart attacks or strokes than those who were given a placebo.

21      20.    Despite these specific studies showing that Celebrex could increase the risk of

22  cardiovascular events and myocardial infarctions more so than other NSAIDS, Defendants

23  continue to promote Celebrex as a healthy alternative to competitors like Vioxx and other

24  NSAIDS. Defendants have yet to change their labeling on the drug to include these new

25  warnings.

26      21.    Most recently in a strict letter, the FDA warned the Pfizer Defendants that their

27  television and print advertisements for Celebrex misled consumers. This letter set forth that five

28

M00931766

1    advertisements did not disclose side effects, and further went on to state that Defendants had

2    made "unsubstantiated effectiveness claims" about Celebrex.

3         22.     Twice in 2002, the Food and Drug Administration ordered Defendants to change

4    their labeling information to include warnings of the potential and serious side effects of Bextra.

5    At this point, PFIZER and PHARMACIA had continued to market the drug Bextra as being free

6    of the side effects usually associated with non steroidal anti-inflammatory medications, despite

7    any evidence of this allegation. Many clinical studies conducted after Bextra was put on the

8    market indicated otherwise. Side effects such as cardiovascular events, myocardial infarctions,

9    stomach disorders, intestinal bleeding and liver and kidney problems are just a few of the more

10   serious side effects associated with the consumption of Bextra. Again, these side effects become

11   more problematic with long term consumption of the drug and can occur without any warning

12   whatsoever.

13         23.     Despite defendants, PFIZER, PHARMACIA and McKESSON's blatant

14   mislabeling and false advertising, there have been numerous adverse event reports and studies

15   into side effects of Bextra and Celebrex. As is clear from the studies, these side effects have

16   been consistently disregarded and minimized to both doctors and consumers. Defendants' desire

17   to promote the growth of its product combined with market competition in the area fostered lack

18   of information about Bextra and Celebrex.

19         24.     Defendants, PFIZER and PHARMACIA continue to sell their drug Celebrex

20   despite the increased and enormous risk this drug poses. At the FDA's urging Defendants

21   withdrew Bextra from the market on April 7, 2005.

M00931B787

OCT-05-2006(THU) 14:02    One Legal                                    P. 001/001

SEP-22-2006(FRI) 13:00                                                P. 002

1   Theodore J. Holt, State Bar No. 148899
2   David R. Zarka, State Bar No. 103185
    Alissa S. Holt, State Bar No. 217005
3   HACKARD & HOLT
    11335 Gold Express Drive, Suite 105
4   Gold River, California 95670
    Telephone:    (916) 853-3000
5   Facsimile:    (916) 853-3010

6   Attorneys for Plaintiffs

7

8            IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    FOR THE COUNTY OF LOS ANGELES

10
    Coordination Proceeding
11  Special Title (Rule 1550(b)                    JCCP No. 4247

12  VIOXX® CASES                                   VIOXX

13                                                 BC 359104

14                                                 COVER SHEET FOR FILING OF
                                                   MULTIPLE VIOXX NOTICES OF
15                                                 ADOPTION OF MASTER COMPLAINT

16                                                 (Per Section 2(a)(6) of CMO 6 signed by the
                                                   Honorable Victoria G. Chaney in JCCP No.
17                                                 4247: VIOXX CASES)

18                                                 Assigned to the Honorable Victoria G.
                                                   Chaney, Department 324
19

20        This Cover Sheet for Filing of Multiple Vioxx Notices of Adoption of Master Complaint

21  ("Cover Sheet") is filed pursuant to Section 2(a)(6) of Case Management Order No. 6 signed by

22  the Honorable Victoria G. Chaney in JCCP No. 4247: VIOXX CASES, which provides, in

23  pertinent part:

24
              "If Notices of Adoption are the initial pleading, multiple Notices of
25        Adoption may be grouped and filed simultaneously in which event there shall
          be only one charge for original filing fees and related court gets for all the
26        grouped Notices of Adoption. Plaintiffs simultaneously filing a group of such
          Notices of Adoption shall also file and serve a Cover Sheet, in the form
27        attached as Exhibit B, listing each and all of the plaintiffs whose separate
          Notices of Adoption are grouped . . ." (emphasis added)
28

                                                1

11351002.ld - 9/22/2006 1:08:32 PM

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

SEP 25 2006

John A. Clark, Executive Officer/Clerk

By _____, Deputy
        D. Garcia

Notices of Adoption of the Master Complaint ("Notices of Adoption") for the following plaintiffs are filed concurrently with this Cover Sheet:

1.  Arthur Bluett and Patricia Bluett
2.  Eileen Couch
3.  Carol Ann Davies and Harry Davies
4.  Sharon Delgado and Benjamin Delgado
5.  Juanita Downs
6.  Norma Ennis
7.  Betty Evans and Larry Evans
8.  Melissa Isham and David Isham
9.  Doris Ellen Johnson
10. Nancy Kampf and Henry Kampf
11. James Kelley and Patricia Kelley
12. Ethel Marcelin
13. Ali Muhilddine and Bassema Muhilddine
14. Arlane Nesmith
15. Sally Newell and Robert Newell
16. Sigrid Nichols
17. Christie Owen and Derrell Owen
18. Bobby Rendon and Dora Rendon
19. Mary Schooling Linenburger
20. Robert Seckman and Deloris Seckman
21. Vera Sitton and Ear Sitton
22. Jerry Strange
23. Ernestine Talbott-Chauncey and Hamp Chauncey
24. Barbara Wilde and Glen Wilde
25. Judith A. Smith
26. Patricia Jones

2

Civil Cover Sheet for Filing Multiple Notices of Adoption of Master Complaint

M009318795

1    These Notices of Adoption are filed in place of initial complaints and will serve as initial

2    pleadings pursuant to CMO 6.

3    This Cover Sheet is to be filed with the Court and served upon Liaison Counsel. Each

4    Notice of Adoption of the Master Complaint filed concurrently with this Cover Sheet is to be

5    filed with the Court, served upon Liaison Counsel, and served upon all parties named herein.

6

7    DATED: 9/2/06                                    HACKARD & HOLT

8

9                                                     By:

10                                                   ALISSA S. HOLT
11                                                   Attorneys for Plaintiffs

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

Civil Cover Sheet for Filing Multiple Notices of Adoption of Master Complaint

M00931B796