EXHIBIT C

**FILED**
LOS ANGELES SUPERIOR COURT

SEP 2 9 2005

JOHN A. CLARKE, CLERK

BY E. SABALBURO, DEPUTY

SUPERIOR COURT OF CALIFORNIA

COUNTY OF LOS ANGELES

Coordination Proceeding
Special Title Rule (Rule 1550(b))

VIOXX® CASES

JCCP No.4247

~~[PROPOSED]~~ **CASE MANAGEMENT ORDER NO. 6: DIRECT FILING AND ADOPTION OF MASTER COMPLAINT**

Assigned to the Honorable Victoria G. Chaney, Department 324.

The parties hereby stipulate to the entry of the following Case Management Order No. 6: Direct Filing and Adoption of Master Complaint in the California Vioxx Coordination Proceeding ("CMO No. 6"), JCCP No. 4247 ("Coordination Proceeding").

1.    **Amendment Of Case Management Order No. 3**

The terms of this CMO No. 6 shall amend and supersede any provisions of CMO No. 3 (General Pre-Trial Order) that are expressly inconsistent herewith.  In all other respects, CMO No. 3 shall continue in full force and effect.

///

LA/613694v1

2..    **Direct Filing Of Cases In Los Angeles County**

The purpose of this order is to enable the parties to allow their matters to be litigated at the earliest possible time, promote cost-effectiveness for all the parties and increase court efficiency, without intending to or effecting the curtailment of the parties rights' with respect to the trial venue, *forum non conveniens motions*, or removal to or remand from federal court.

(a)    Any case arising out of the use of Vioxx, brought by either a resident of Los Angeles County or a resident of another California county, may be initiated in Los Angeles Superior Court, provided that the following conditions are met and procedures followed:

(1)    As the initial pleading, each individual plaintiff shall file either (1) a short form Complaint titled "**Complaint: Amended Notice of Adoption of Master Complaint (2005 Amended NOA)**," a copy of which is attached hereto as Exhibit "A" ("Notice of Adoption"), or (2) a separate complaint.  A plaintiff filing a Notice of Adoption as the initial pleading need not and shall not file a separate complaint.  However, a plaintiff filing a separate complaint as the initial pleading must, within 75 days of the coordination of the action, file a Notice of Adoption of Master Complaint, which shall be the operative complaint.

(2)    A plaintiff filing a separate complaint as the initial pleading shall state clearly on the caption page of the complaint, in bold print, the following information:  (1) "**VIOXX**," and (2) "**County of Origin:** [plaintiff's county of residence or the county where the alleged injury occurred] **Superior Court.  By Order of the Honorable Victoria G. Chaney, the designated county of origin shall be deemed, and is stipulated to be, the original county in which this case was initially filed and pending for purposes of removal under 28 U.S.C. § .1441(a) and potential trial venue.**"

(3)    A separate Notice of Adoption shall be filed for each plaintiff claiming personal injury and for each wrongful death decedent.

(4)    The initial pleading (whether a Notice of Adoption or a separate complaint) shall be accompanied by a Civil Case Cover Sheet (Form CM 0-10) and an Addendum to Civil Case Cover Sheet and Statement of Location (Form CIV 109 03-04).  If multiple Notices of Adoption are filed, the filing must also comply with Section 2(a)(6) of this CMO 6.

- 2 -

1

2        (5)     The initial pleading and Civil Cover Sheets shall be filed in the Central

3  Division of Los Angeles Superior Court, located at 111 N. Hill Street, Los Angeles.  The case

4  will be transferred to Department 324 of the Central Civil West Division by the Clerk of the

5  Court.

6

7        (6)     If Notices of Adoption are the initial pleading, multiple separate Notices of

8  Adoption may be grouped and filed simultaneously in which event there shall be only one charge

9  for original filing fees and related court fees for all the grouped Notices of Adoption.  Plaintiffs

10  simultaneously filing a group of such Notices of Adoption shall also file and serve a Cover Sheet,

11  in the form attached as Exhibit B, listing each and all of the plaintiffs whose separate Notices of

12  Adoption are grouped.  This procedure does not affect the requirement set forth above that a

13  separate Notice of Adoption shall be filed for each plaintiff claiming personal injury and for each

14  wrongful death decedent.

15        (7)    After filing the initial pleading in the Central Division and upon effecting

16  service of process on defendants, the parties are to follow the add-on procedures as provided in

17  CMO 3, XVI.

18     (b)     Each plaintiff whose action has been coordinated in this proceeding but who has

19  not filed a Notice of Adoption to date must file a Notice of Adoption (Exhibit A) within 75 days

20  of the entry of this order, which shall be deemed the sole operative complaint for such plaintiff

21  and shall supersede any prior complaint filed by such plaintiff.

22     (c)     Any plaintiff wishing to add a cause of action and/or party not identified in the

23  operative Master Complaint may add such a cause of action and/or party by providing the

24  necessary information in Section 1(b) of the Amended Notice of Adoption (Exhibit A).

25     (d)    *For any and all Notices of Adoption filed after the date of this order, any*

26  *defendant previously named and/or cause of action previously alleged in the original complaint*

27  *(where the initial pleading was a separate complaint) that is not included in the Notice of*

28

CMO No. 6:  Direct Filing And Adoption Of Master Complaint

1   *Adoption shall be deemed <u>dismissed</u> without prejudice as of the date of the filing of the Notice of*

2   *Adoption.*

3       (e)    If a complaint and answer(s) thereto were filed prior to the date of this order and

4   before such case became a part of the coordinated action, plaintiff(s) in that case shall file a

5   Notice of Adoption (Exhibit A) and all defendants that previously answered shall be deemed to

6   have answered; and such case shall remain at issue as to those parties and those claims.

7

8   **3.    Original Venue For Removal And Trial Purposes**

9       For purposes of removal, remand and trial venue, the designated county of origin specified

10  in the initial pleading shall be deemed, and is stipulated to be, the original county in which this

11  case was initially filed and pending.  This Court expressly reserves the right to readdress this

12  issue and revise this Order, if necessary, to effectuate the goal of this order which is to enable the

13  parties to allow their matters to be litigated at the earliest possible time, promote cost-

14  effectiveness for all the parties and increase court efficiency, without intending to or effecting the

15  curtailment of the parties' rights with respect to the trial venue, forum non conveniens motions, or

16  removal to or remand from federal court.

17

18  **4.    Remedy For Failure To Comply With Filing Procedures**

19      Failure to comply with the filing procedures set forth in CMO No. 3 and this CMO No. 6

20  shall be remedied using the following procedure:  The parties shall first meet and confer and

21  attempt to resolve the issues.  If such meet and confer efforts are unsuccessful, notice of the

22  failure to comply with the filing procedures shall be provided to the Court, whereupon the Court

23  will issue an Order to Show Cause regarding failure to comply with this order.

24

25

26

27

28

- 4 -

1

2

3   **SO STIPULATED:**

4   Dated: September 23, 2005.

5                                          SEDGWICK DETERT MORAN &
                                           ARNOLD LLP
6

7                                          By *Ralph W Campillo*

8                                          Ralph Campillo
                                           Wendy Tucker
9                                          Attorneys for Defendant
                                           Merck & Co., Inc. and Co-Defense
10                                         Liaison Counsel

11  Dated: September 23, 2005.

12

13                                         REED SMITH LLP

14                                         By *Ralph W Campillo for*

15                                         Michael K. Brown
                                           Thomas J. Yoo
16                                         Attorneys for Defendant
                                           Merck & Co., Inc. and Co-Defense
17                                         Liaison Counsel

18  Dated: September 23, 2005.

19

20                                         GIRARDI KEESE

21                                         By *O'Callahan (for)*

22                                         James O'Callahan
                                           Attorneys for Plaintiffs and Plaintiffs'
23                                         Liaison Counsel

24

25

26

27

28

CMO No. 6: Direct Filing And Adoption Of Master Complaint

1    **SO ORDERED:**

2

3    Dated:  9/29/05

4

5

6                        The Honorable Victoria G. Chaney
                         Judge of the Superior Court
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 6 -

CMO No. 6:  Direct Filing And Adoption Of Master Complaint

1   [Plaintiff's Counsel Information]

2

3

4

5

6

7

8                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                           COUNTY OF LOS ANGELES

10

11   | Coordination Proceeding Special Title | CASE NO. JCCP No. 4247 |
     | (Rule 1550(b)) | Case No.: _____ |

12

     VIOXX® CASES

13
                                              **County of Origin:** _____
14                                            **Superior Court**

15                                            *(By Order of the Honorable Victoria G.*
                                              *Chaney, the designated county of origin shall*
16                                            *be deemed, and is stipulated to be, the original*
                                              *county in which this case was initially filed*
17                                            *and pending for purposes of removal under 28*
                                              *U.S.C. § 1441(a) and potential trial venue.)*
18

19                                            **COMPLAINT:  AMENDED NOTICE OF**
                                              **ADOPTION OF VIOXX MASTER**
20                                            **COMPLAINT (2005 Amended NOA)**

21                                            Assigned to the Honorable Victoria G. Chaney
                                              Department 324
22

23

24

25

26

27

28

                                          -1-

1    Pursuant to the Court's Case Management Order No. 3:  General Pre-trial Order and Case

2  Management Order No. 6: Order Regarding Direct Filing, plaintiff

3  _____ hereby adopts the Master Complaint, and any rulings

4  or order of the Court relating thereto:

5    1. **(a)**  **Causes of action and Parties alleged in the Master Complaint**.  Plaintiff

6  incorporates by reference each of the causes of action in the Master Complaint checked below

7  and alleges same against Merck:

8    ☐    Strict Liability – Failure to Warn

9    ☐    Negligence

10   ☐    Negligence Per Se

11   ☐    Breach of Implied Warranty

12   ☐    Breach of Express Warranty

13   ☐    Deceit by Concealment

14   ☐    Negligent Misrepresentation

15   ☐    Violation of Business & Professions Code § 17200

16   ☐    Violation of Business & Professions Code § 17500

17   ☐    Violation of Civil Code § 1750

18   ☐    Wrongful Death

19   ☐    Survivor Action

20   ☐    Loss of Consortium

21   **(b)**    **Causes of Action and/or Parties not alleged in the Master Complaint**.

22    Plaintiff alleges additional causes of action and/or names additional parties not

23  mentioned in the Master Complaint as follows: _____

24  _____

25  _____

26  _____

27  _____

28

-2-

1    2.    Plaintiff is a resident of the State of California, County of

2    _____.  Plaintiff's injuries as alleged in this litigation occurred in the County of

3    _____, in the State of _____.

4    3.    Plaintiff ☐ is/ ☐ is not claiming damages for mental and/or emotional distress.

5    4.

6    ☐    Plaintiff is an individual who ingested VIOXX®, and who asserts claims for

7    damages herein by complaining of the following injuries: _____

8    _____

9    _____

10   _____

11   ☐    Plaintiff is the spouse of _____, an individual

12   who ingested VIOXX® and allegedly sustained personal injuries as a result.

13   ☐    Plaintiff's decedent, _____, an individual who

14   ingested VIOXX® and allegedly sustained fatal injury as a result.  The following

15   plaintiffs are heirs of plaintiff's decedent, or other persons entitled to bring an

16   action for the wrongful death of plaintiff's decedent, and bring the causes of

17   action alleged herein pursuant to Code of Civil Procedure § 377.60:

18   _____

19   _____

20   _____

21   ☐    Plaintiff is a personal representative or successor in interest to decedent,

22   _____, who ingested VIOXX® and allegedly sustained

23   fatal injury as a result, and is authorized to bring a survivor action on behalf of the

24   decedent pursuant to Code of Civil Procedure § 377.31, et seq.  Plaintiff has been

25   appointed as the decedent's personal representative or successor in interest by the

26   following court, on the following date:

27   _____

28

-3-

1     _____

2         5.     The Vioxx ingested by plaintiff or decedent was purchased at the following

3     pharmacies *(provide name and address of each pharmacy)*: _____

4     _____

5     _____

6     _____

7     _____

8         6.     *(If plaintiff alleges a cause of action for deceit by concealment and/or a cause of*

9     *action for negligent misrepresentation, plaintiff must complete this section.)*  Plaintiff claims that

10    defendants are liable to plaintiff for deceit by concealment and/or negligent misrepresentation

11    based on the following allegations:

12        (a)     What allegedly false statement(s) did defendants make to you or your doctor *(if*

13    *doctor, state the name and address of the doctor)*?: _____

14    _____

15    _____

16    _____

17    _____

18    _____

19        (b)     State the name and job title of the individual(s) who made the above-described

20    statements to you or your doctor?: _____

21    _____

22    _____

23        (c)     When, and by what means (e.g., writing, oral statement, television, Internet, etc.),

24    were the above-described statements made to you or your doctor?: _____

25    _____

26    _____

27    _____

28

-4-

1    (d)    When, and how, did you or your doctor rely on the above-described statements?:

2    _____

3    _____

4    _____

5    _____

6    (e)    If the above-described statements were false by virtue of defendants' concealment

7    of facts that were known by defendants, state the facts that were concealed and that, if known by

8    you or your doctor, would have prevented your alleged injury: _____

9    _____

10    _____

11    _____

12    _____

13    7.    Plaintiff requests the relief checked below:

14    ☐    Past and future general damages, according to proof.

15    ☐    Past and future medical and incidental expenses, according to proof.

16    ☐    Past and future loss of earnings and/or earning capacity, according to proof.

17    ☐    Punitive and exemplary damages, where permitted by law.

18    ☐    Damages for past and future mental and/or emotional distress, according to proof.

19    ☐    Damages for past and future loss of consortium, according to proof.

20    ☐    Costs of suit incurred herein.

21    ☐    Injunctive relief (specify): _____

22    _____

23    _____

24    ☐    Other (specify): _____

25

26    DATED: _____, 2005

27    By: _____
        [Attorney's Name]
        Attorneys for Plaintiff
28      [Plaintiff's Name]

-5-

1

2

3

4

5

6

7

8

SUPERIOR COURT OF CALIFORNIA

9

COUNTY OF LOS ANGELES

10

11 | Coordination Proceeding
Special Title (Rule 1550(b))

JCCP No. 4247

12 | VIOXX® CASES

**VIOXX**

13

**COVER SHEET FOR FILING OF
MULTIPLE VIOXX NOTICES OF
ADOPTION OF MASTER COMPLAINT**

14

15

*(Per Section 2(a)(6) of CMO 6 signed by the
Honorable Victoria G. Chaney in JCCP No.
4247: VIOXX CASES)*

16

17

Assigned to the Honorable Victoria G. Chaney,
Department 324.

18

19

20      This Cover Sheet For Filing of Multiple Vioxx Notices of Adoption of Master Complaint
("Cover Sheet") is filed pursuant to Section 2(a)(6) of Case Management Order 6 signed by the

21   Honorable Victoria G. Chaney in JCCP No. 4247: VIOXX CASES, which provides, in pertinent
part:

22      **"If Notices of Adoption are the initial pleading, multiple separate Notices of
Adoption may be grouped and filed simultaneously in which event there shall be only one**

23   **charge for original filing fees and related court fees for all the grouped Notices of Adoption.
Plaintiffs simultaneously filing a group of such Notices of Adoption shall also file and serve**

24   **a Cover Sheet, in the form attached as Exhibit B, listing each and all of the plaintiffs whose
separate Notices of Adoption are grouped. . . ."** (emphasis added)

25

26      Notices of Adoption of the Master Complaint ("Notices of Adoption") for the following
plaintiffs are filed concurrently with this Cover Sheet:

27      1. *(Name of plaintiff)*

28      2. *(Name of plaintiff)*
        3. *(Name of plaintiff)*

- 1 -

1

    4. *(Name of plaintiff)*

2       These Notices of Adoption are filed in place of initial complaints and will serve as initial
pleadings pursuant to CMO 6.

3

4       This Cover Sheet is to be filed with the Court and served upon Liaison Counsel. Each
Notice of Adoption of the Master Complaint filed concurrently with this Cover Sheet is to be
filed with the Court, served upon Liaison Counsel, and served upon all parties named therein.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 2 -

Civil Cover Sheet For Filing Multiple Notices Of Adoption Of Master Complaint

**PROOF OF SERVICE**

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is Sedgwick, Detert, Moran & Arnold LLP, 801 South Figueroa Street, 18th Floor, Los Angeles, California 90017-5556. On September 30, 2005, I served the within document pursuant to the Court's Electronic Case Management Order (CMO No. 1):

**CASE MANAGEMENT ORDER NO. 6: DIRECT FILING AND ADOPTION OF MASTER COMPLAINT**

☐    FACSIMILE - by transmitting via facsimile the document(s) listed above to the fax number(s) set forth on the attached Telecommunications Cover Page(s) on this date before 5:00 p.m.

☐    MAIL - by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

☐    PERSONAL SERVICE - by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☐    OVERNIGHT COURIER - by placing the document(s) listed above in a sealed envelope with shipping prepaid, and depositing in a collection box for next day delivery to the person(s) at the address(es) set forth below via .

☒    CASE HOME PAGE – by submitting an electronic version of the above referenced documents via file transfer protocol to the CaseHomePage.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on September 30, 2005, at Los Angeles, California.

_____
Kelly C. Palmer

LA/610181v1

EXHIBIT D

FILED _____ ENTERED
_____ LODGED _____ RECEIVED

**NOV 2 7 2002**

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN RE: PHENYLPROPANOLAMINE
(PPA) PRODUCTS LIABILITY
LITIGATION,

MDL NO. 1407

ORDER DENYING PLAINTIFF'S
MOTION TO REMAND

This document relates to:

Barnett, et al. v. American
Home Products Corp., et al.,
No. C02-423R

THIS MATTER comes before the court on the motion of plain-
tiffs to remand the case to state court in Mississippi. Having
reviewed the papers filed in support of and in opposition to this
motion, the court rules as follows:

## I. BACKGROUND

Plaintiffs purchased a variety of over-the-counter drugs
including, but not limited to, products sold under the trade
names "Robitussin," "Alka-Seltzer Plus," "Dimetapp," "Tavist D,"
"BC," "Triaminic," "Contac," "Comtrex," and "Equate Tussin CF."
All of these products contained the ingredient phenylpro-
panolamine ("PPA"). The individuals later consumed the medica-
tion and suffered unidentified types of injuries. In June 2001,
plaintiffs filed an amended complaint in Mississippi state court
linking the PPA in the medicine with the injuries sustained.

ORDER
Page - 1 -

1    The complaint alleges numerous causes of action against both

2  manufacturers and distributors of PPA-containing products, as

3  well as several retail stores that sold those products.  One of

4  the stores named as a defendant, Bill's Dollar Stores, Inc.,

5  d/b/a Bill's Dollar Store ("Bill's Dollar Store"), is a Missis-

6  sippi corporation.  Two of the six total plaintiffs purchased

7  PPA-containing products from Bill's Dollar Store.[1]

8    Defendants removed the complaint to federal court alleging

9  that plaintiffs fraudulently joined Bill's Dollar Store.  Plain-

10  tiffs moved to remand to state court.  The case was later trans-

11  ferred to this court as part of a multi-district litigation

12  ("MDL").

13                    II.  ANALYSIS

14    A plaintiff cannot defeat federal jurisdiction by fraudu-

15  lently joining a non-diverse party.  As an MDL court sitting in

16  the Ninth Circuit, this court applies the Ninth Circuit's fraudu-

17  lent joinder standard to the motion to remand.  See, e.g., In re

18  Diet Drugs Prods. Liab. Litig., 220 F. Supp. 2d 414, 423 (E.D.

19  Pa. 2002); In re Bridgestone/Firestone, 204 F. Supp. 2d 1149,

20  1152 n.2 (S.D. Ind. 2002); In re Tobacco/Gov'tal Health Care

21  Costs Litig., 100 F. Supp. 2d 31, 34 n.1 (D. D.C. 2000); In re

22  ────────────────

23    [1]Defendants assert the misjoinder of these plaintiffs'
    claims and request that the court sever and deny remand as to the
24  four plaintiffs who did not purchase any products from Bill's
    Dollar Store, or from any other Mississippi store.  However,
25  because, as discussed below, the court denies remand as to all
    plaintiffs named in this action, the court need not address the
26  question of misjoinder at this time.

ORDER
Page - 2 -

1  Ford Motor Co. Bronco II Prods. Liab. Litig., MDL-991, 1996 U.S.

2  Dist. LEXIS 6769, at *2-4 (E.D. La. May 16, 1996).[2]  Under this

3  standard, joinder of a non-diverse party is deemed fraudulent

4  "'[i]f the plaintiff fails to state a cause of action against a

5  resident defendant, and the failure is obvious according to the

6  settled rules of the state.'"  Morris v. Princess Cruises, Inc.,

7  236 F.3d 1061, 1067 (9th Cir. 2001) (quoting McCabe v. General

8  Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987)).[3]

9       The propriety of removal to federal court is determined from

10  the allegations in the complaint at the time of removal.  See

11  Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1318 (9th Cir. 1998)

12  However, in the case of fraudulent joinder, the defendant "'is

13  entitled to present the facts showing the joinder to be fraudu-

14  lent.'"  Id. (quoting McCabe, 811 F.2d at 1339).  See also Morris

15  _____

16    [2] See generally Menowitz v. Brown, 991 F.2d 36, 40-41 (2d
    Cir. 1993); In Re Korean Airlines Disaster, 829 F.2d 1171, 1174-

17  76 (D.C. Cir. 1987).

18    [3] However, as a practical matter, application of the Fifth
    Circuit's fraudulent joinder standard would not alter the court's

19  conclusion.  See Badon v. RJR Nabisco, Inc., 224 F.3d 382, 393
    (5th Cir. 2000) (remand is denied where there is "no reasonable

20  basis for predicting that plaintiffs might establish liability .
    . . against the in-state defendants.")  For example, recent MDL

21  courts utilized fraudulent joinder standards similar, and in one
    case identical, to the Fifth Circuit's standard in deeming

22  Mississippi pharmacies and their employees fraudulently joined
    for reasons similar to those expressed in this opinion.  See In

23  re Diet Drugs Prods. Liab. Litig., 220 F. Supp. 2d at 423-24
    (noting that there had been "a pattern of pharmacies being named

24  in complaints, but never pursued to judgment, typically being
    voluntarily dismissed at some point after the defendants' ability

25  to remove the case has expired"); In re Rezulin Prods. Liab.
    Litig., 133 F. Supp. 2d 272, 279 & n.3, 288-92 (S.D.N.Y. 2001).

26

ORDER
Page - 3 -

1  236 F.3d at 1067-68 (citing <u>Cavallini v. State Farm Mut. Auto.</u>

2  <u>Ins. Co.</u>, 44 F.3d 256, 263 (5th Cir. 1995) for the proposition

3  that the court may "'pierc[e] the pleadings'" and consider

4  "summary judgment-type evidence.")

5       Defendants allege that plaintiffs fraudulently joined Bill's

6  Dollar Store, while plaintiffs claim the existence of legitimate

7  causes of action against Bill's Dollar Store, including products

8  liability, negligence, misrepresentation, and implied warranty

9  claims.  The parties also argue as to the relevance of a bank-

10 ruptcy petition filed by Bill's Dollar Store prior to the filing

11 of this suit.

12 A.   <u>Products Liability</u>

13      The complaint contains failure to warn and design defect

14 allegations pursuant to the Mississippi Products Liability Act.

15 Miss. Code Ann. § 11-1-63.  Under the Products Liability Act,

16 plaintiff must show that at the time the product left the control

17 of the manufacturer or seller, it was defective in failing to

18 contain adequate warnings or instructions, and/or was designed in

19 a defective manner.  Miss. Code Ann. § 11-1-63 (a)(i)(2)-(3).

20 Plaintiff must also show that the manufacturers and sellers knew,

21 or in light of reasonably available knowledge or the exercise of

22 reasonable care should have known, about the danger that caused

23 the alleged damage.  Miss. Code Ann. § 11-1-63 (c)(i),(f)(i).[4]

24 _____

25      [4] <u>See also</u> <u>Huff v. Shopsmith, Inc.</u>, 786 So.2d 383, 387 (Miss.
   2001)("With the adoption of 11-1-63, common law strict liability,
26 as laid out in <u>State Stove Mfg. Co. v. Hodges</u>, 189 So.2d 113

ORDER
Page - 4 -

1    Plaintiffs allege in the complaint that "defendants" or "all

2    defendants" knew or should have known of dangers associated with

3    PPA.  Moreover, plaintiffs specifically aver this knowledge or

4    reason to know on the part of the retailer defendants, including

5    Bill's Dollar Store.  However, the court finds that no factual

6    basis can be drawn from the complaint that Bill's Dollar Store

7    had knowledge or reason to know of any dangers allegedly associ-

8    ated with PPA.

9        First, the complaint utilizes the plural "defendants" in a

10   number of allegations that one could not reasonably interpret to

11   include Bill's Dollar Store. See, e.g., Louis v. Wyeth-Ayerst

12   Pharm., Inc., No. 5:00CV102LN, slip op. at 5-9 (S.D. Miss. Sep.

13   25, 2000) (finding products liability allegations lodged against

14   "defendants" conclusory where there was no factual support for

15   conclusion that Mississippi pharmacies had knowledge or reason to

16   know of alleged dangers associated with various diet drugs).[5]

17   _____

18   (Miss. 1966), is no longer the authority on the necessary
     elements of a products liability action.")

19
     [5] See also In re Diet Drugs Prods. Liab. Litig., 220 F. Supp.
20   2d at 424 (finding complaints, including failure to warn,
     negligence, breach of warranty, and strict liability claims,
21   devoid of specific allegations against Mississippi pharmacies and
     "filled instead with general statements levied against all
22   defendants, which most properly can be read as stating claims
     against drug manufacturers."); In re Rezulin Products Liab.
23   Litig., 133 F. Supp. 2d at 291 (finding improper joinder in case
     where Mississippi pharmacies were lumped in with manufacturers
24   and acts alleged, including failure to warn, breach of warranty,
     and fraud, were attributed to "'defendants' generally", but
25   never connected to the pharmacies); accord Badon, 224 F.3d at
     391-93 ("While the amended complaint does often use the word
26

     ORDER
     Page - 5 -

1  For example, the complaint describes "defendants" as members of
2  the Non-Prescription Drug *Manufacturers* Association ("NDMA").
3  Through this association, "defendants" purportedly participated
4  in numerous discussions relating to the safety of PPA over the
5  past two decades, had representatives sit on the NDMA PPA Task
6  Force, and funded relevant studies.  In other words, plaintiffs,
7  in significant part, demonstrate "defendants'" knowledge as to
8  risks allegedly posed by PPA through activities engaged in by
9  manufacturer defendants alone.

10      Indeed, while "defendants" are alleged to have been aware or
11  to have had responsibility for awareness of numerous scientific
12  journal articles, incident reports, medical textbooks, and other
13  reports containing information as to risks of PPA consumption,
14  general medical practitioners are excluded from this awareness
15  and described as being not "fully informed."  The complaint
16  supplies no factual support for a conclusion that a dollar store
17  possessed medical and scientific knowledge beyond that possessed
18  by medical practitioners.

19      Second, the complaint specifically lays the responsibility
20  for allegedly concealing dangers posed by PPA on the manufacturer
21  defendants.  For example, the complaint alleges that the manufac-
22  turer defendants concealed material facts regarding PPA through
23  product packaging, labeling, advertising, promotional campaigns

24  ————————

25  'defendants,' frequently it is evident that such usage could not
    be referring to the 'Tobacco Wholesalers.'"; finding conspiracy
26  allegations against Louisiana defendants entirely general).

ORDER
Page - 6 -

1  and materials, and other methods.  This allegation directly

2  undermines and contradicts the idea that Bill's Dollar Store had

3  knowledge or reason to know of alleged defects.  See, e.g.,

4  Louis, slip op. at 4-5 (finding complaint's "major theme" to

5  consist of the "manufacturers' intentional concealment of the

6  true risks of the drug(s), coupled with dissemination through

7  various media of false and misleading information of the safety

8  of the drug(s) at issue, [which belied] any suggestion of knowl-

9  edge, or reason to know by [the] resident defendants.")  Cf. In re

10  Rezulin Products Liab. Litig., 133 F. Supp. 2d 272, 290 (S.D.N.Y.

11  2001) (finding Mississippi pharmacies facing failure to warn

12  claims fraudulently joined where "the theory underlying the

13  complaints [was] that the manufacturer defendants hid the dangers

14  of Rezulin from plaintiffs, the public, physicians, distributors

15  and pharmacists -- indeed from everyone.")

16      In sum, the court concludes that one could not reasonably

17  read the complaint to support the idea that the retailer defen-

18  dants had knowledge or reason to know of any dangers allegedly

19  associated with PPA.  Indeed, reading the complaint as a whole,

20  this allegation reveals itself as directed towards the manufac-

21  turer defendants alone.  As such, the court finds that plaintiffs

22  fail to state a products liability cause of action against Bill's

23  Dollar Store.[6]

24  _____

25      [6] The complaint once alludes to an "alternative" breach of
    express warranty claim under the Products Liability Act.  See
26  Miss. Code Ann. § 11-1-63 (a)(i)(4) (requiring a showing that the

ORDER
Page - 7 -

1 B.    Negligence and Misrepresentation

2      The complaint alleges negligence and misrepresentation by

3 Bill's Dollar Store.  A negligence cause of action also requires

4 a showing of knowledge or reason to know on the part of the

5 seller.  See, e.g., R. Clinton Constr. Co. v. Bryant & Reaves,

6 Inc., 442 F. Supp. 838, 851 (N.D. Miss. 1977) ("The rule is well

7 settled that in order to fasten liability upon a party for

8 negligence, it must be shown by a preponderance of the evidence

9 that he knew or through the exercise of reasonable care should

10 have known that his selection of a [product] would cause damage

11 to his customer.")[7]  A misrepresentation cause of action requires

12 _____

13 seller breached an express warranty or failed to conform to other
express factual representations upon which the claimant relied).
14 However, the products liability allegations go on to touch solely
upon failure to warn and design defect claims.  Because the
15 complaint lacks any factual basis for support of a breach of
express warranty claim against Bill's Dollar Store, the court
16 also finds this bare allegation insufficient to support remand.

17 
   [7]Accord Louis, slip op. at 3-4 & n.3 ("[K]nowledge, or a
18 reason to know, is also a necessary requisite for any claim of
failure to warn or negligence that a plaintiff might undertake to
19 assert extraneous to a claim under the Products Liability Act
itself (assuming solely for the sake of argument that such a
20 claim could exist).");  Cadillac Corp. v. Moore, 320 So.2d 361,
365 (Miss. 1975) (discussing negligence in "vendor/purchaser"
21 context and stating that "fault on the part of a defendant so as
to render him liable is to be found in action or nonaction,
22 accompanied by knowledge, actual or implied, of the probable
result of his conduct.")  Cf. Moore v. Memorial Hosp. of
23 Gulfport, 825 So.2d 658, 664-66 (Miss. 2002) (extending "learned
intermediary" doctrine to pharmacists in case involving
24 prescription drug, and holding no actionable negligence claim
could exist against a pharmacy unless a plaintiff indisputably
25 informed the pharmacy of health problems which contraindicated
the use of the drug in question, or the pharmacist filled
26 

ORDER
Page - 8 -

1  a plaintiff to show:

2      (1) a representation; (2) its falsity; (3) its materi-
    ality; (4) the speaker's knowledge of its falsity or
3      ignorance of its truth; (5) the speaker's intent that
    the representation should be acted upon by the hearer
4      and in the manner reasonably contemplated; (6) the
    hearer's ignorance of its falsity; (7) the hearer's
5      reliance on its truth; (8) the hearer's right to rely
    thereon; and (9) the hearer's consequent and proximate
6      injury.

7  Johnson v. Parke-Davis, 114 F. Supp. 2d 522, 525 (S.D. Miss.

8  2000) (citing Allen v. Mac Tools, Inc., 671 So.2d 636, 642 (Miss.

9  1996)).

10      Again, the court finds that the general and contradictory

11  allegations in the complaint do not support the existence of any

12  knowledge or reason to know on the part of Bill's Dollar Store to

13  support a negligence cause of action.  The court finds the

14  complaint similarly bereft of any factual support for the idea

15  that Bill's Dollar Store made any misrepresentations whatsoever

16  to plaintiffs regarding the PPA-containing products.  See, e.g.,

17  Johnson, 114 F. Supp. 2d at 525 ("Suffice it to say that Plain-

18  tiffs have no proof . . . that any of the named [Mississippi]

19  representatives made any representations directly to any of the

20  Plaintiffs.  Thus, none of the Plaintiffs was the 'hearer' of any

21  of the sales representatives' alleged misrepresentations.";

22  finding plaintiffs had no cause of action for misrepresentation).

23  Instead, as discussed above, the complaint attributes this

24

25  _____

26  prescriptions in quantities inconsistent with the recommended
dosage guidelines).

ORDER
Page - 9 -

1  behavior to the manufacturing defendants alone.  As such, the

2  court also finds that plaintiffs fail to state negligence and

3  misrepresentation causes of action against Bill's Dollar Store.

4  C.    Implied Warranty

5      The complaint also alleges that Bill's Dollar Store breached

6  implied warranties of merchantability and fitness for particular

7  purpose.  See Miss. Code Ann. §§ 75-2-314, 315.  The complaint

8  accuses "defendants" of breaching the implied warranty of mer-

9  chantability in failing to adequately label containers and

10  packages containing PPA, and because the products sold failed to

11  conform to promises or affirmations of facts made on the contain-

12  ers or labels.  See Miss. Code Ann. § 75-2-314 (2)(e)-(f).  The

13  complaint accuses both manufacturers and sellers of breaching the

14  implied warranty of fitness for particular purpose where they had

15  reason to know of the particular use of the products, and the

16  purchasers relied on the sellers' skill or judgment in selecting

17  and furnishing suitable and safe products.  See Miss. Code Ann. §

18  75-2-315.

19      In order to recover for breach of implied warranty, a buyer

20  "must within a reasonable time after he discovers or should have

21  discovered any breach notify the seller of breach or be barred

22  from any remedy."  Miss. Code Ann. § 75-2-607 (3)(a); accord C.R.

23  Daniels, Inc. v. Yazoo Mfg. Co., 641 F. Supp. 205, 210-11 (S.D.

24  Miss. 1986); Gast v. Rogers-Dingus Chevrolet, 585 So. 2d 725,

25  730-31 (Miss. 1991).  Here, the complaint contains no indication

26  that plaintiffs provided Bill's Dollar Store with any notice as

ORDER
Page - 10 -

1 to an alleged breach of warranty prior to the institution of this
2 lawsuit.

3     Additionally, with respect to the merchantability claim, the
4 complaint contains no factual support for a conclusion that
5 Bill's Dollar Store was in any way involved with the labeling
6 and/or packaging of the products at issue.  Instead, the com-
7 plaint alleges that the manufacturer defendants concealed mate-
8 rial facts regarding PPA through product packaging and labeling.

9     The court likewise finds plaintiffs' fitness for particular
10 purpose allegation insufficient.  "Mississippi does not recognize
11 an implied warranty of fitness for a particular purpose when the
12 good is purchased for the ordinary purpose of a good of that
13 kind." <u>Farris v. Coleman Co.</u>, 121 F. Supp. 2d 1014, 1018 (N.D.
14 Miss. 2000) (fitness for particular purpose claim failed where
15 plaintiff purchased cooler to keep food and beverages cold - the
16 ordinary purpose for which a cooler is used).  Here, plaintiffs
17 attested that they purchased PPA-containing products to remedy
18 their "cold, flu, sinus and/or allergy symptoms" - the ordinary
19 purpose of these medications.

20     Therefore, for the reasons stated above, the court finds
21 that plaintiffs fail to state implied warranty causes of action
22 against Bill's Dollar Store.

23 D.   <u>Bankruptcy</u>

24     Bill's Dollar Store filed a bankruptcy petition in February
25 2001, several months prior to the filing of plaintiffs' com-
26 plaint.  The filing of the bankruptcy petition operates as a stay

ORDER
Page - 11 -

1   on judicial or other proceedings brought against Bill's Dollar

2   store that were or could have commenced prior to the commencement

3   of the bankruptcy proceeding.  See 11 U.S.C. § 362(a); In re

4   Cajun Elec. Power Co-Op, Inc., 185 F.3d 446, 457 (5th Cir. 1999).

5        Plaintiffs argue that the automatic stay poses no barrier to

6   relief given that they were unaware of the bankruptcy petition at

7   the time they filed their complaint, and because they anticipate

8   that the Bankruptcy Court will agree to their pending request to

9   lift the stay.  However, whether or not plaintiffs knew of the

10  petition and whether or not the stay may later be lifted, the

11  fact remains that, at the time plaintiffs filed their complaint,

12  the stay operated to prohibit their lawsuit.  As noted above, the

13  court determines jurisdiction based on the claims as stated at

14  the time of removal.  As such, the court finds the existence of

15  the stay at the time of filing serves as an additional reason to

16  deny remand of this matter to state court.  Cf. Ritchey, 139 F.3d

17  at 1319-20 (denying remand where the statute of limitations had

18  expired at the time plaintiff filed the complaint).[8]

19               III.  CONCLUSION

20       The court concludes that plaintiffs fail to state a cause of

21  action against the only non-diverse defendant, and that the

22

23       [8]Unlike in a number of other cases transferred to this MDL,
    the defendants here did not supply the court with any summary
24  judgment-type evidence to establish the retailer defendant's
    fraudulent joinder.  However, the court nonetheless finds that a
25  plain reading of the complaint does not allow a conclusion that
    plaintiffs state a cause of action against Bill's Dollar Store.
26

ORDER
Page - 12 -

1  failure is obvious according to the settled rules of Mississippi.

2  As such, the court finds Bill's Dollar Store fraudulently joined

3  and DENIES plaintiff's motion to remand the case to the state

4  courts of Mississippi.

5      DATED at Seattle, Washington this 26th day of November,

6  2002.

7

8  BARBARA JACOBS ROTHSTEIN
   UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER
Page - 13 -